CAITLYN HUGHES, a Minor, By Her Next Friend, Daphne Hughes, Plaintiff Below-Appellant,
v.
THE CHRISTIANA SCHOOL DISTRICT, an agency of the State of Delaware; DR. JOSEPH WISE, individually and in his capacity as Superintendent; DR. LILLIAN LOWERY, individually and in his capacity as Superintendent; VERONICA HOLMES, individually and in her capacity as School Nurse; DONALD B. PATTON, individually and in his capacity as Principal; and LAURIE DAVIS, individually and in her capacity as an employee, Defendants-Below-Appellees.
No. 31, 2008,
Supreme Court of Delaware.
Submitted: April 2, 2008.
Decided: May 19, 2008.
Before STEELE, Chief Justice, HOLLAND, and RIDGELY, Justices.

ORDER
HENRY DUPONT RIDGELY Justice
This 19th day of May 2008, it appears to the Court that:
(1) Plaintiff-Appellant Caitlyn Hughes, through her mother and next friend, Daphne Hughes, appeals the Superior Court's grant of summary judgment for defendants-appellees Christiana School District and five of its employees. On appeal, Plaintiff argues that the Superior Court erred in finding that the State Tort Claims Act bars her claims and that there were material disputes of fact that summary judgment was not appropriate. We find no merit to these arguments and vote to affirm.
(2) The plaintiff, then twelve, was in seventh grade at Kirk Middle School in New Castle County during the 2003-2004 school year. She had a history of fainting spells and seizures associated with the beginning of her menstrual cycle. A stomachache would precede these spells, and Plaintiff knew that if she felt dizzy or sick, she should sit down on the floor. In the beginning of the school year, Plaintiff and her mother met with the school nurse, Veronica Holmes, to advise her of this problem. Nurse Holmes recommended that if she felt like she was going to faint, to inform her teacher and Holmes would come with a wheelchair.[1] Likewise, if she was in the hallway and felt symptomatic, she should sit down on the floor, put her head down, and tell someone to get the nurse.
(3) On March 17, 2004, Plaintiff told her teacher that she felt sick and needed to go to the nurse's office.[2] A friend volunteered to escort her to the nurse's office. There, Plaintiff told Nurse Holmes that she had a stomachache. After lying down, she felt better and the nurse permitted her to return to class on her own. Sometime later, in another class, she began feeling "very sick and faint and weak." She admitted that she felt nauseous and that it was the same feeling that she had had in previous fainting spells. She told that teacher that she needed to go the nurse because she "didn't feel good and felt very weak," but she did not tell the teacher that she felt like she was going to faint. The teacher agreed that she looked "very pale" and that she should go to the nurse's office. Plaintiff agreed that she knew she was not supposed to go to a nurse without an escort when she felt like she was going to faint. She went without an escort because she "wanted to go to the nurse" and "thought [she] could make it."[3] On the way to the office, Plaintiff suffered a fainting spell, which resulted in physical injury.
(4) Plaintiff filed a complaint in Superior Court against the school district and five of its employees for her injuries. Defendants filed a motion for summary judgment on the basis that they were immune from liability under the State Tort Claims Act[4] and that their actions did not rise to the level of gross and wanton negligence. The Superior Court found that the actions of allowing Plaintiff to walk to the nurse's office unescorted and without a wheelchair were discretionary, and that the facts in the light most favorable to Plaintiff did not rise to the level of gross and wanton negligence on the part of defendants. Thereafter, the Superior Court granted summary judgment in favor of defendants. This appeal followed.
(5) This Court reviews de novo the trial court's "grant of summary judgment both as to facts and law to determine whether or not the undisputed facts, viewed in the light most favorable to the opposing party, entitle the moving party to judgment as a matter of law."[5] "When the evidence shows no genuine issues of material fact in dispute, the burden shifts to the non-moving party to demonstrate that there are genuine issues of material fact in dispute that must be resolved at trial."[6]
(6) Plaintiff argues that by purchasing insurance, the School District waived sovereign immunity and the State Torts Claim Act (the "Act") does not apply. This argument lacks merit. The Act still applies even when insurance coverage is available.[7]
(7) Plaintiff next challenges the Superior Court's finding that the Act barred her claims. This argument rests on her assertion that the acts in permitting her to leave unescorted to the nurse's office were ministerial and not discretionary. The Superior Court, applying its own precedents,[8] found that the teacher's decision to permit Plaintiff to walk without an escort was discretionary. The court rested its decision on the fact that Plaintiff's intentional failure to tell the teacher that she was feeling faint gave the teacher a "choice of methods" in determining how Plaintiff could get to the nurse's office, including the choice to permit her to walk there by herself.
(8) Under 10 Del. C. § 4001, "no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee" unless the defendant establishes that at least one of the following elements of immunity is missing:
(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;
(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and
(3) The act or omission complained of was done without gross or wanton negligence[.][9]
(9) This Court has explained that this section of the Act provides sovereign immunity to the State and its agents "where the act (of the State) was done in good faith, without gross or wanton negligence, and arose out of and in connection with the performance of discretionary duties."[10] In other words, Section 4001 provides immunity to discretionary acts committed in good faith, in the course of the performance of official duties and without gross or wanton negligence. Further, "the act was to make clear that public officers and employees would be fully liable where they exercised their authority in a grossly negligent, or bad faith manner."[11] The determination of whether a particular act is discretionary or ministerial is a question of law, which may sometimes require a factual determination.
(10) In interpreting another section of the Act, this Court noted that the General Assembly had provided immunity for "discretionary" acts, but not for "ministerial" ones.[12] We adopted the general definition of "ministerial" from the Restatement (Second) of Torts: "An act is ministerial if the act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act."[13] We also explained that "[t]he distinction between discretionary and ministerial acts is always one of degree."[14] In explaining what makes an act discretionary, the Superior Court is correct that there is no "hard and fast rule." Here, the undisputed facts support the Superior Court's conclusion.
(11) Plaintiff knew that if she felt she was going to faint, she was supposed to inform her teachers of that fact. She also knew she was not supposed to go to a nurse without an escort. Because Plaintiff "thought she could make it" to the nurse's office without any help, she told the teacher that she "didn't feel good and felt very weak." As pointed out by the Superior Court, "the evidence indicates that it was the teacher who independently recognized that [Plaintiff] looked pale after she raised her hand and instructed her to go to the nurse's office." Without any reason to press the issue, the teacher exercised her discretion in responding to the student's request and sent her to the nurse's office. Viewing the facts in the light most favorable to the plaintiff, no facts support that the teacher should have known that Plaintiff was about to suffer a fainting spell and that she should have either called the nurse to bring a wheelchair or permit another student to escort her to the nurse's office. Under these circumstances, the Superior Court did not err in finding that the teacher's actions were discretionary as a matter of law.
(12) Plaintiff also takes issue with the Superior Court's finding that there was "a complete lack of evidence the teacher's decision exhibited gross negligence or wanton and willful disregard for [Plaintiff's] safety." Particularly, she focuses on the fact that Plaintiff is young and said she was unable to think clearly when experiencing this problem. This Court has explained that "[g]ross negligence is a higher level of negligence representing an extreme departure from the ordinary standard of care."[15] We have also explained, in the context of punitive damages, that "[f]or defendant's conduct to be found wilful or wanton the conduct must reflect a `conscious indifference' or `I don't care' attitude."[16] It is undisputed that Plaintiff knew what she was supposed to do if she felt like she was going to faint, as she admitted she felt when she told the teacher that she "didn't feel good." When the facts are viewed in the light most favorable to Plaintiff, there are no genuine issues of material fact upon which Plaintiff could show that the teacher's actions are grossly negligent or demonstrate a conscious indifference for her student's well-being. We hold that the Superior Court did not err in concluding that no reasonable juror could find that the act complained of was done with gross or wanton negligence.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Plaintiff's mother admitted that Nurse Holmes suggested that she should be escorted or be brought to the nurse's office in a wheelchair. According to her mother, Plaintiff was also embarrassed by the thought of having to be brought to the nurse's office in a wheelchair.
[2] She did not tell that teacher that she was dizzy or that she needed an escort to the nurse's office.
[3] She told Nurse Holmes the same in explaining what had happened.
[4] 10 Del. C. §§ 4001-4005, 4010-4013.
[5] Handler Corp. v. Tlapechco, 901 A.2d 737, 744 (Del. 2006) (quoting Motorola, Inc. v. Amkor Tech., 849 A.2d 931, 935 (Del. 2004); Rhudy v. Bottlecaps, Inc., 830 A.2d 402, 405 (Del. 2003); accord Grabowski v. Mangler, 938 A.2d 637, 641 (Del. 2007).
[6] Grabowski, 938 A.2d at 641.
[7] Jester v. Seaford Sch. Dist., 1991 WL 269899 (Del. Super.) ("[T]he law in Delaware is that the purchase of insurance by a state agency with sovereignty does not mean that that state entity has waived its sovereign immunity under the Act."), aff'd, 610 A.2d 725 (Del. 1992) (Table).
[8] E.g., Simms v. Christiana Sch. Dist., 2004 WL 344015, at *8 (Del. Super.) ("Discretionary acts are those which require some determination or implementation which allows a choice of methods, or, differently stated, those where they is no hard and fast rule as to a course of conduct."); Martin v. State, 2001 WL 112100, at *6 (Del. Super.) ("[T]he ministerial act that was required of the State employees was the act of conducting an investigation; which they did. The actions complained of by the Plaintiff however, concern the manner in which the State employees carried out their duty to investigate. . . . How it was done involved an exercise of judgment and therefore, discretion. The existence of the first element under the Act must be deemed to have been established as a result."); Scarborough v. Alexis I. duPont High Sch., 1986 WL 10507, at *3 (Del. Super.) ("The issue is not whether the official's position involves the exercise of discretion, but whether the activities which the official was involved in at the time of the alleged negligence were discretionary.").
[9] 10 Del. C. § 4001. This section also permits a claim "as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction." Id.
[10] Doe v. Cates, 499 A.2d 1175, 1180 (Del. 1985). See also Martin v. State, 2001 WL 112100, at *5 (Del. Super.) ("In short, immunity is conferred relative to discretionary acts committed in good faith, in the course of the performance of official duties and without gross or wanton negligence."); Smith v. New Castle County Vocational-Technical Sch. Dist., 574 F. Supp. 813, 821 (D. Del. 1983) ("That is, public officials are exempt from suit under section 4001 when performing official duties involving the exercise of discretion and when performed in good faith and without gross or wanton negligence.").
[11] Cates, 499 A.2d at 1181.
[12] See Sussex County, Delaware v. Morris, 610 A.2d 1354, 1358-59 (Del. 1992).
[13] Id. at 1359 (quoting RESTATEMENT (SECOND) of Torts § 895D cmt. h (1979)) (internal quotation marks and ellipses omitted).
[14] Id.
[15] Browne v. Robb, 583 A.2d 949, 953 (Del. 1990) (quoting W. PROSSER, Handbook of the Law of Torts 150 (2d ed. 1955)).
[16] Cloroben Chem. Corp. v. Comegys, 464 A.2d 887, 891 (Del. 1983).